**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

JENNIFER N.,                          :
    plaintiff.                    :
    v.                            : CASE NO. 3:24-CV-01837-RAR
                                  :
FRANK BISIGNANO[1],                   :
COMMISSIONER OF                       :
SOCIAL SECURITY,                      :
                                  :
    defendant.                    :

**RULING ON PLAINTIFF'S MOTION TO REVERSE AND/OR REMAND AND DEFENDANT'S MOTION TO AFFIRM THE DECISION OF THE COMMISSIONER**

Jennifer N. ("plaintiff") appeals the final decision of the Commissioner of Social Security ("the Commissioner") pursuant to 42 U.S.C. § 405 (g). The Commissioner denied plaintiff's application for Social Security Disability Benefits in a decision dated December 28, 2023. (R. 17-29.) Plaintiff timely appealed to this Court. Currently pending are Plaintiff's motion for an order reversing or remanding her case for a hearing (Dkt. 20) and defendant's motion to affirm the decision of the Commissioner (Dkt. 22). For the following reasons, Plaintiff's motion to reverse, or in the alternative, remand, is GRANTED and the Commissioner's motion to affirm is DENIED.

---

[1] Frank Bisignano has been confirmed as the Commissioner of the Social Security Administration on May 7, 2025and should be substituted as the defendant in this matter.

1

## STANDARD

"A district court reviewing a final . . . decision [of the Commissioner of Social Security] pursuant to section 205(g) of the Social Security Act, 42 U.S.C § 405(g), is performing an appellate function." Zambrana v. Califano, 651 F.2d 842, 844 (2d Cir. 1981).[2]  "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, [are] conclusive . . . ." 42 U.S.C. § 405(g). Accordingly, the court may not make a de novo determination of whether a plaintiff is disabled in reviewing a denial of disability benefits. Id.; Wagner v. Sec'y of Health and Human Servs., 906 F.2d 856, 860 (2d Cir. 1990). Rather, the court's function is to ascertain whether the Commissioner applied the correct legal principles in reaching his conclusion, and whether the decision is supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987).

Therefore, absent legal error, this court may not set aside the decision of the Commissioner if it is supported by substantial evidence. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Further, if the Commissioner's decision is supported

---

[2] Unless otherwise indicated, in quoting cases, all internal quotation marks, alterations, emphases, footnotes, and citations are omitted.

by substantial evidence, that decision will be sustained, even where there may also be substantial evidence to support the plaintiff's contrary position. Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982).

The Second Circuit Court of Appeals has defined substantial evidence as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams *ex rel.* Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence must be "more than a scintilla or touch of proof here and there in the record." Williams, 859 F.2d at 258.

The Social Security Act ("SSA") provides that benefits are payable to individuals who have a disability. 42 U.S.C. § 423(a)(1). "The term 'disability' means . . . [an] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . ." 42 U.S.C. § 423(d)(1). To determine whether an individual is disabled within the meaning of the SSA, the Administrative Law Judge ("ALJ") must follow a five-step evaluation process as promulgated by the Commissioner.[3]

---

[3] The five steps are as follows: (1) the Commissioner considers whether the claimant is currently engaged in substantial gainful activity; (2) if not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities; (3) if the claimant has a "severe impairment," the Commissioner must ask whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the

To be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "[W]ork which exists in the national economy means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." Id.[4]

## PROCEDURAL HISTORY

Plaintiff initially filed for disability insurance benefits under Title II and for Supplemental Security Income Benefits under Title XVI on June 9, 2021, with an alleged onset date ("AOD") of May 1, 2021. (R. 17).[5]  Plaintiff alleged her ability to work was limited by vertigo, migraines, spine pain, and an

---

regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him or her disabled, without considering vocational factors such as age, education, and work experience; (4) if the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has the residual functional capacity to perform his or her past work; and (5) if the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform. The Commissioner bears the burden of proof on this last step, while the claimant has the burden on the first four steps. 20 C.F.R. § 416.920(a)(4)(i)-(v).

[4] The determination of whether such work exists in the national economy is made without regard to: 1) "whether such work exists in the immediate area in which [the claimant] lives;" 2) "whether a specific job vacancy exists for [the claimant];" or 3) "whether [the claimant] would be hired if he applied for work." Id.

[5] The Court cites pages within the administrative record as "R. ___."

4

anxiety disorder. (R. 362.) The initial application was denied on October 15, 2021, and again on reconsideration on July 18, 2022. (R. 17.) Plaintiff filed for an administrative hearing which was held by Administrative Law Judge John Aletta ("ALJ") on November 14, 2023.[6] (R. 37-75.) After the hearing, the ALJ issued a written decision denying plaintiff's application on December 28, 2023. (R. 17-29.)  Plaintiff thereafter sought review by the Appeals Council, which was denied on September 20, 2024. (R. 1-6.) Plaintiff then timely filed this action seeking judicial review. (Dkt. #1).

## THE ALJ'S DECISION

After applying the five-step evaluation process, the ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act from her alleged onset date of May 3, 2022, through the date of the ALJ's decision on December 28, 2023. (R. 28.) At step one, the ALJ determined that plaintiff, although working part-time, had not engaged in substantial gainful activity between her alleged onset date and the date of the ALJ's decision. (R. 19.)

At step two, the ALJ found that plaintiff had the following severe impairments: generalized anxiety disorder, depressive disorder, bipolar disorder, migraines with vertigo, thoracic

---

[6] An initial hearing was held on January 24, 2023, however, in order to allow the plaintiff to obtain counsel, the hearing was ended and rescheduled to a later date at plaintiff's request. (R. 76-89.)

lordosis, and degenerative disc disease of the cervical spine. (R. 20.)

At step three, the ALJ determined that plaintiff's severe impairments did not meet or medically equal the severity of a listed impairment in 20 C.F.R. Part 404, Subpt. P, App. 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526). (R. 20). The ALJ specifically considered plaintiff's spine disorder under Listing 1.15 pertaining to disorders of the skeletal spine but found no evidence of nerve root involvement or the need for an assistive device for ambulation. (R. 20.)  The ALJ also considered the plaintiff's migraines pursuant to listing 11.02, related to epilepsy, which is the most analogous listing to migraines.  (R. 20.)  However, the ALJ noted that the evidence does not document marked physical functioning limitations.  (R. 20.)  Finally, the ALJ also considered whether plaintiff met the listings 12.04 and 12.06 related to mental health impairments.  (R. 20.)  The ALJ determined that plaintiff did not satisfy the paragraph B or C criteria. (R. 20-21.)

At step four, the ALJ found plaintiff has the residual functional capacity ("RFC") to perform light work with the following limitations:

> She cannot climb ladders, ropes, or scaffolds.  She can work in environments having a moderate noise level.  She cannot work at unprotected heights or operate machinery having moving mechanical parts which are exposed.  She

can perform simple, routine tasks but not at a strict, production-rate pace.

(R. 22.)

Lastly, at step five, the ALJ concluded that plaintiff was unable to perform past relevant work. (R. 27.) Based on the testimony of a vocational expert, the ALJ determined that there were other jobs that exist in significant numbers in the national economy such as collator operator, office helper, and storage facility rental clerk that the plaintiff could perform with her RFC, thus finding plaintiff "not disabled." (R. 28.)

## DISCUSSION

Plaintiff argues that there are a number of problems with the ALJ's findings and ruling in this case.  Upon review, the Court is troubled by the ALJ's evaluation of treating physician Dr. Shifferdecker's medical opinion and finds that remand is warranted.

**I.    The ALJ's Evaluation of the Medical Opinion Evidence.**

Plaintiff asserts that the ALJ failed to properly evaluate a variety of medical opinions in the record when reaching conclusions on the levels of persuasiveness of the opinions. (Dkt. #20-1 at 23-29.)  The Commissioner, in response, argues that the ALJ's RFC properly accounts for the plaintiff's medical conditions and is supported by substantial evidence.  (Dkt. #22-1 at 5-18.)  In so arguing, the Commissioner addresses the

7

medical opinion evidence and contends that the ALJ properly evaluated the opinions and provided support and substantial evidence for those findings. (Dkt. #22-1 at 11-16.)

For claims filed on or after March 27, 2017, an ALJ must not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the plaintiff's] medical sources." 20 C.F.R. § 416.1520c(a). The ALJ must consider any medical opinions according to certain factors, including: (1) whether objective medical evidence supports and is consistent with the opinion; (2) the relationship between the medical source and claimant; (3) the medical source's specialty; and (4) other factors that "support or contradict a medical opinion[.]" Id. §§ 404.1520c(c), 416.920c(c). The ALJ must explain how he or she considered the "supportability" and "consistency" factors in the evaluation, but need not explain how he or she considered the secondary factors unless the ALJ finds that two or more medical opinions regarding the same issue are equally supported and consistent with the record but not identical. 20 C.F.R. § 404.1520c(b), 416.920c(b)(3).

For the "supportability" factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative finding(s), the more persuasive the

medical opinions or prior administrative finding(s) will be."
Id. §§ 404.1520c(c)(1), 416.920c(c)(1). For the "consistency"
factor, "[t]he more consistent a medical opinion(s) or prior
administrative finding(s) is with the evidence from other
medical sources and nonmedical sources in the claim, the more
persuasive the medical opinion(s) or prior administrative
finding(s) will be." Id. §§ 404.1520c(c)(2), 416.920c(c)(2).
Additionally, ALJs should still consider that "[u]nder The Code
of Federal Regulations, [a] medical source may have a better
understanding of [a claimant's] impairment(s) if he or she
examines [the claimant] than if the medical source only reviews
evidence in [the claimant's] folder.'" Migdalia C. v. Kijakazi,
No. 3:21-CV-00592 (RAR), 2022 WL 3368583, at *7 (D. Conn. Aug.
16, 2022) (quoting 20 CFR §§ 404.1520c(c)(3)(v),
416.920c(c)(3)(v)).

In analyzing medical opinion evidence, an ALJ is required
to both identify evidence that supports his conclusion and
"build an accurate and logical bridge from the evidence to [his]
conclusion to enable meaningful review." Janita H. v. Comm'r of
Soc. Sec., No. 7:21-CV-05199-GRJ, 2023 WL 196158, at *8
(S.D.N.Y. Jan. 17, 2023) (citing Horton v. Saul, 19-CV-8944,
2021 WL 1199874, at *12 (S.D.N.Y. Mar. 30, 2021)). Remand may be
appropriate where an ALJ's conclusory statements regarding
supportability "offer no insight into 'how well [either doctor]

supported and explained [his or her] opinion.'" Ayala v. Kijakazi, 620 F. Supp. 3d 6, 31 (S.D.N.Y. 2022) (quoting Vellone v. Saul, No. 120CV00261RAKHP, 2021 WL 319354 (S.D.N.Y. Jan. 29, 2021), report and recommendation adopted sub nom. Vellone ex rel. Vellone v. Saul, No. 20-CV-261 (RA), 2021 WL 2801138 (S.D.N.Y. July 6, 2021)).

Plaintiff has argued that the ALJ erred in his evaluation of a variety of medical opinions in the record. However, upon review, the Court finds remand appropriate in light of the evaluation of Dr. Schifferdecker, and need not address plaintiff's other concerns.

Dr. Schifferdecker, plaintiff's primary care doctor, completed a Headache/RFC questionnaire in November of 2022. (R. 816-19.) In the questionnaire, Dr. Schifferdecker indicated diagnoses of chronic headaches, migraines, and vertigo. (R. 816.) Headaches are noted to be frontal, cause tension in the neck and shoulder area and impart a severe sharp achy pain. (R. 816.) Dr. Schifferdecker noted that plaintiff's headaches are accompanied by vertigo, visual disturbances, and mood changes. (R. 816.) Further, it was indicated that headaches occur one to four days a week and the duration varies but could be constant for days. (R. 817.) Dr. Schifferdecker noted triggers of stress and lack of sleep, further that moving, noise, lights, and coughing could exacerbate plaintiff's headaches. (R. 817.) The

10

questionnaire continues and notes test findings showing nothing acute, notations regarding treatment with various prescription medication (R. 817-18.)  Finally, the opinion indicates headaches would render plaintiff unable to work and that she would have a need for unscheduled breaks during a typical shift. (R. 818-19.)  Plaintiff is also noted to likely be absent from work one to four days per month as a result of her headaches. (R. 819.)

> In evaluating this opinion the ALJ stated:
>
> The claimant's primary care doctor provided a headache residual functional capacity questionnaire in November 2022 in which he opined that the claimant would miss work on average one to four days per month due to headaches and that she would require unscheduled work breaks a few times per week (Exhibit 18F). This opinion is not persuasive because it is not supported by the normal physical and mental status examination findings noted throughout the record, nor is it consistent with the claimant's report that her baseline headache pain is only 1-2/10.

(R. 24.)

Plaintiff argues that this evaluation is insufficient as it does not clearly consider that the opinion is based on objective medical evidence and is supported by treatment notes from visits with plaintiff.  (Dkt. #20-1 at 25.)  The Commissioner argues that the evaluation of the opinion is sufficient because it mentions that the opinion is inconsistent with the record which contains normal physical and mental exam findings. (Dkt. #22-1 at 13-14.) The Commissioner then goes on to highlight other

sections of the ALJ decision where the ALJ actually cites to evidence to support his assertions and argues that Dr. Schifferdecker's own notes do not support his opinion. (Dkt. #22-1 at 14.)

The one paragraph cited above contains the ALJ's complete discussion of the medical source opinion from plaintiff's treating primary care physician.[7]  The ALJ does not provide any citation to the record or discussion of the issues that the ALJ has with the supportability and consistency of this opinion. The ALJ only incicates that the opinion is not persuasive because the record contains normal physical and mental findings, and the plaintiff reported baseline headache pain of 1-2/10. (R. 24.)

Courts within the Second Circuit have found statements lacking explanation to be insufficient to meet the new requirements.  *See* Melissa S. v. Comm'r Soc. Sec., No. 5:21-CV-420 (DJS), 2022 WL 1091608, at *4 (N.D.N.Y. Apr. 12, 2022) (finding remand appropriate where "the ALJ does nothing more than state that the opinion is inconsistent with the record but

---

[7] The Commissioner mentions that Dr. Schifferdecker also provided a reasonable accommodation form to TJ Maxx, plaintiff's part time employer, in April 2023. (R. 1050-52.)  In the document, Dr. Schifferdecker indicates potential accommodations needed for plaintiff.  While the Commissioner spends sometime defending the ALJ's finding the document not persuasive, the Court is concerned with the headache questionnaire in this matter.  It does not appear that the plaintiff has directly challenged the findings related to the TJ Maxx reasonable accommodation form.

offers no explanation as to how that is true[]" and that "[b]road, conclusory statements that an opinion is not consistent with the medical record are inadequate under the Commissioner's regulations."). Rather, the ALJ must "explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions." Kathleen A. v. Comm'r of Soc. Sec. Admin., No. 3:20-CV-1034 (LEK), 2022 WL 673824, at *6 (N.D.N.Y. Mar. 7, 2022).

As referenced, the Commissioner has noted that there is support for the ALJ's finding by highlighting and citing records that the ALJ references elsewhere in his opinion. "However, it is not sufficient for an ALJ to merely discuss other medical sources at some point in the decision." Kathleen A., 2022 WL 673824, at *6.  "Thus, an ALJ must specifically set forth how they considered the consistency of a medical opinion in the analysis of the medical opinion, not merely refer to the other medical evidence at some point in the decision." Id.

Where, as here, the ALJ determination is so vague and broad it is not appropriate for counsel to clean up after the ALJ later.  Furthermore, it is impossible from the single sentence of analysis to determine the "normal physical and mental status examination findings" to which the ALJ is referring. (R. 24.) Simply, this is not sufficient to build the logical bridge necessary for the Court to fully review the decision.  As this

13

Court has held in the past, it very well could be possible to "build a logical bridge with the evidence in the record, it is difficult for the reviewing court to locate or confirm the existence of such a bridge given the overly broad conclusory statements which are not supported by citation to the record to help the reviewing court determine whether support for the conclusions exists in the record." Gina B. v. Comm'r of Soc. Sec., No. 3:23-CV-00769-RAR, 2024 WL 4262640, at *6 (D. Conn. Sept. 23, 2024).

Additionally, the Court notes that the only specific reference in the very brief analysis of Dr. Schifferdecker's opinion is to "[plaintiff]'s report that her baseline headache pain is only 1-2/10." (R. 24.)  Although the ALJ chose not to provide a citation to this information, the Court has been able to locate the reference.  Notably, the records from which this would be drawn show that it was reported at different times as a baseline headache pain of 1/10, 2/10, or 1-2/10. (R. 1071, 1072, 1092, and 1124.)  However, in context, the sentence in the records also always notes that the headache pain was reported to be exacerbated to a 6-10/10, depending on the record. (R. 1071, 1092, 1124, and 1125.)  While the Court was able to locate what it believes to have been the reference that the ALJ was making, this still falls woefully short of creating a sufficient logical

14

bridge to allow the Court to fully review the decision regarding Dr. Schifferdecker.

To be clear, the Court has not opined on the medical evidence of record, the persuasiveness of the opinions, or the disability status of the plaintiff.  Indeed, upon remand and another hearing, it is entirely possible that the ALJ reaches the same conclusions, but the ALJ must do so with more specific citations to the record evidence to allow robust review.

**CONCLUSION**

Plaintiff's motion for an order reversing or remanding the Commissioner's decision (Dkt. #20) is GRANTED and the Commissioner's motion to affirm that decision (Dkt. #22) is DENIED.

This is not a recommended ruling. The consent of the parties allows this magistrate judge to direct the entry of a judgment of the district court in accordance with the Federal Rules of Civil Procedure. Appeals can be made directly to the appropriate United States Court of Appeals from this judgment. See 28 U.S.C. § 636(c)(3).

It is so ordered this 18th day of March 2026, at Hartford, Connecticut.

_____/s/_____

Robert A. Richardson
United States Magistrate Judge